UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Steven Vernon Bixby, #6024, | ) | |
| Petitioner, | ) | Civil Action No. 4:17-cv-954-BHH |
| vs. | ) | |
| | ) | |
| Bryan P. Stirling, Commissioner, | ) | **Opinion and Order** |
| South Carolina Department of | ) | |
| Corrections; and Willie D. Davis, | ) | |
| Warden, Kirkland Reception and | ) | |
| Evaluation Center, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner, Steven Vernon Bixby ("Petitioner"), represented by counsel and under a sentence of death, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. This action is before the Court on Petitioner's petition for writ of habeas corpus ("Petition") (ECF Nos. 44, 72, 72-1, and 80)[1] and Respondents' motion for summary judgment and return and memorandum in support thereof (collectively, the "Return") (ECF Nos. 83 and 84). Petitioner filed a traverse and memorandum of law in opposition to Respondents' motion for summary judgment ("Traverse"). (ECF No. 92.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this matter was referred to United States Magistrate Thomas E. Rogers for pre-trial proceedings and a Report and Recommendation ("Report"). On January 11, 2019, Magistrate Judge Rogers issued a Report recommending that Respondents' motion for summary judgment be granted and the Petition be dismissed without an evidentiary hearing. (ECF No. 94.)

---

[1] Petitioner's Petition was filed in four parts as more fully explained in the Magistrate Judge's Report and Recommendation. (*See* ECF No. 94 at 2 n.3.) For ease of reference, the Court will refer to all four filings collectively as the "Petition."

Petitioner filed objections on March 13, 2019 (ECF No. 107), and Respondents replied on April 9, 2019 (ECF No. 116). On May 31, 2019, after obtaining leave of Court, Petitioner filed a sur-reply in support of his objections. (ECF No. 125.) The Report sets forth the relevant factual and procedural background (ECF No. 94 at 2–25), which the Court incorporates herein without recitation.[2] For the reasons set forth herein, the Court overrules Petitioner's objections, **ACCEPTS** the Magistrate Judge's Report (ECF No. 94), **GRANTS** Respondents' motion for summary judgment (ECF No. 84), and **DENIES** Petitioner's Petition (ECF Nos. 44, 72, 72-1, and 80) in its entirety.

## I. LEGAL STANDARD

### A. <u>The Magistrate Judge's Report and Recommendation</u>

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error.

---

[2] As always, the Court says only what is necessary to address Petitioner's objections against the already meaningful backdrop of the Magistrate Judge's thorough Report; exhaustive recitation of law and fact exist there.

*See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**B. <u>Summary Judgment Standard</u>**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the Court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When a respondent is the moving party and the petitioner has the ultimate burden of proof on an issue, the respondent must identify the parts of the record that demonstrate the petitioner lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(c).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." At *Ennis v. National Ass'n of Bus. & Educ. Radio*, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

C. <u>Section 2254 Standard</u>

Because Petitioner filed the petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his claims are governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997). Section 2254 "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). For instance, § 2254 authorizes review of only those applications asserting a prisoner is in custody in violation of the Constitution or federal law and only when, except in certain circumstances, the prisoner has exhausted remedies provided by the State. *Id*.

When a § 2254 petition includes a claim that has been adjudicated on the merits in a State court proceeding, § 2254 provides that the application shall not be granted with respect to that claim, unless the State court's adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Pinholster*, 563 U.S. at 181 (internal citations omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Fourth Circuit Court of Appeals recently explained proper application of these standards as follows:

Under § 2254(d)(1), such a decision is "contrary to" Supreme Court

precedent "if the state court applied a rule that contradicts the governing law set forth in" Supreme Court cases, or "confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrive[d] at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is an "unreasonable application" of clearly established Supreme Court precedent if the PCR court "correctly identified the governing legal rule but applied it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08, 120 S. Ct. 1495. "In order for a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21, 123 S. Ct. 2527 (internal citation and quotation marks omitted); *see also Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011) ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Alternatively, a state prisoner may be granted relief pursuant to § 2254(d)(2) if the PCR court['s] decision[] was based on a factual determination "sufficiently against the weight of the evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010). As with legal conclusions, "for a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous." *Id.* (internal citation omitted).

*Williams v. Stirling*, 914 F.3d 302, 311–12 (4th Cir. 2019), *as amended* (Feb. 5, 2019) (modifications omitted).

### D. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has held that this right is violated when counsel retained by, or appointed to, a criminal defendant fails to provide adequate or effective legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* established a two-prong test for a claim

of ineffective assistance of counsel in violation of the Sixth Amendment, under which the criminal defendant must show deficient performance and resulting prejudice. *Id.* at 687. "The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and courts should indulge in a "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (modifications omitted) (quoting *Strickland*, 466 U.S. at 689–90). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).

The standard for an ineffective assistance claim under *Strickland* in the first instance is already "a most deferential one," and "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (internal citations omitted) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *Lindh*, 521 U.S. at 333 n.7; *Strickland*, 466 U.S. at 689). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. . . . [but] whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

E. **Procedural Default**

A petitioner's failure to raise in State court a claim asserted in his § 2254 petition "implicates the requirements in habeas of exhaustion and procedural default." *Gray v. Netherland*, 518 U.S. 152, 161 (1996). "The habeas statute generally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Thus, "[a] state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's established appellate review process.'" *Id*. (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In a similar vein, "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance" and has procedurally defaulted those claims. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Absent an exception, a federal court will not entertain a procedurally defaulted claim, so long as the State procedural requirement barring the State court's review is adequate to support the judgment and independent of federal law. *See Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012); *Walker v. Martin*, 562 U.S. 307, 315–16 (2011); *Beard v. Kindler*, 558 U.S. 53, 55 (2009). "Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court." *Woodford*, 548 U.S. at 93 (internal citation omitted). Rather, "if the petitioner procedurally

defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Id.* (citing *Gray*, 518 U.S. at 162; *Coleman*, 501 U.S. at 744-51).

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez*, 566 U.S. at 10 (citing *Coleman*, 501 U.S. at 750). "In *Coleman*, . . . the Supreme Court held that . . . a federal habeas 'petitioner cannot claim constitutionally ineffective assistance of counsel in [State post-conviction] proceedings to establish cause.'" *Fowler v. Joyner*, 753 F.3d 446, 460 (4th Cir. 2014) (quoting *Coleman*, 501 U.S. at 752). Subsequently, in *Martinez*, the Supreme Court recognized a "narrow exception" to the rule stated in *Coleman* and held that, in certain situations, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. The Fourth Circuit has summarized the exception recognized in *Martinez*:

> [A] federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consists of there being no counsel or only ineffective counsel during the state collateral review proceeding;" (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim;" and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

*Fowler*, 753 F.3d at 461 (modifications omitted) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

In the alternative to showing cause and prejudice, a petitioner may attempt to

demonstrate a miscarriage of justice, *e.g.*, actual innocence (*see Bousley v. United States*, 523 U.S. 614, 623 (1998) (stating that a petitioner's claim may be reviewable despite procedural default if he can establish that the constitutional error at issue "has probably resulted in the conviction of one who is actually innocent" (internal citation and quotation marks omitted)); *see also Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)), or abandonment by counsel (*see Maples v. Thomas*, 565 U.S. 266, 283 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal citations and quotation marks omitted)).

## DISCUSSION

Petitioner filed timely objections to the Magistrate Judge's Report on March 13, 2019. (ECF No. 107.) The Court will address each of those objections in turn.

### I.    Failure to Apply *De Novo* Review to All PCR Claims

Petitioner first objects by arguing:

> Because the state PCR court adopted the state's brief wholesale instead of evaluating for itself [Petitioner's] evidence and related claims, he did not receive a full and fair hearing in state court. For that reason the Magistrate Judge's failure to apply de novo review to all claims originating in the state post-conviction review ("PCR") proceedings should have been [sic] reviewed de novo.

(*Id.* at 2.) In this objection, Petitioner appears to be inviting the Court to conduct a "*de novo* review" of his substantive habeas claims because the PCR court, in its order denying Petitioner's PCR application (ECF No. 107-1), copied verbatim large sections of the State of South Carolina's post-hearing brief instead of drafting its own findings of fact and conclusions of law. (*See id.* at 2–4.) In essence, Petitioner encourages the Court to exercise carte blanche quasi-appellate jurisdiction over all prior State court proceedings.

This generalized collateral attack on the PCR proceedings is not presented as a claim in the Petition, and it is improper for Petitioner to manufacture a new theory of relief in the context of objections to the Magistrate Judge's Report. *See*, *e.g.*, *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (finding that a plaintiff cannot raise new claims in a brief opposing summary judgment unless the plaintiff first amends the complaint) (citation omitted).

Moreover, the Court cannot help but see the irony in federal habeas counsel faulting the PCR court's use of others' writing given that the instant Petition is largely a conglomeration of: (1) the facts of the underlying crimes cut-and-pasted verbatim from the South Carolina Supreme Court's opinion on direct appeal (*see* ECF No. 72-1 at 11–15 (quoting *State v. Bixby*, 698 S.E.2d 572, 576–78 (S.C. 2010)); (2) background information on Petitioner's childhood, family, and mental health cut-and-pasted verbatim from PCR counsel's post-hearing brief (*see id.* at 15–72 (quoting PCR App. Vol. XII pp. 5655–720, ECF No. 23-3 at 183–248)); and (3) a statement of Petitioner's federal habeas grounds, under each of which counsel purports to incorporate by reference the arguments in PCR counsel's post-hearing brief and cites portions of that brief addressing each ground (*see id.* at 72–75). The ineffective assistance of counsel ("IAC") claims in Grounds I through V are supported with cursory citations to the Sixth Amendment, *Strickland v. Washington*, 466 U.S. 668 (1984), and a few other cases respecting the IAC standard of review, but this section of the Petition includes no further legal argument. (*See id.* at 72–75.) The Petition never mentions—let alone discusses the application of—the standard to be applied by federal courts reviewing habeas petitions filed pursuant to 28 U.S.C. § 2254, and never references any putative error(s) in the PCR court's findings of fact or

conclusions of law. (*See* ECF No. 72 at 1–8; ECF No. 72-1 at 1–76; ECF No. 80 at 1–8.)

Indeed, other than reciting the procedural history of the case (*see* ECF No. 72-1 at 1–11),

it is difficult to find any original work product generated by federal habeas counsel in the

prosecution of Petitioner's preserved claims. Petitioner's counsel asked for and was

granted additional time to brief Ground VI—the one claim not presented in the PCR

court—namely, that Petitioner's rights to due process and the effective assistance of

counsel were violated by trial counsel's failure to protect Petitioner's rights under the

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA Claim"). (*See* ECF No.

72-1 at 75; ECF No. 76 (granting extension of time).)

"[AEDPA] requires a prisoner who challenges (in a federal habeas court) a matter

'adjudicated on the merits in State court' to show that the relevant state-court 'decision'

(1) 'was contrary to, or involved an unreasonable application of, clearly established

Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188,

1191 (2018) (quoting 28 U.S.C. § 2254(d)). Moreover,

> Deciding whether a state court's decision "involved" an unreasonable
> application of federal law or "was based on" an unreasonable determination
> of fact requires the federal habeas court to "train its attention on the
> particular reasons—both legal and factual—why state courts rejected a
> state prisoner's federal claims," *Hittson v. Chatman,* 576 U.S. ——, ——, 135
> S. Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (GINSBURG, J., concurring in
> denial of certiorari), and to give appropriate deference to that decision,
> *Harrington v. Richter,* 562 U.S. 86, 101–102, 131 S. Ct. 770, 178 L.Ed.2d
> 624 (2011).

*Id.* at 1191–92. Suffice it to say, Petitioner's first objection does not even begin to show

how or why the Magistrate Judge supposedly failed to properly consider Petitioner's

federal habeas claims. The objection does not point to any specific error in the Magistrate

Judge's analysis or conclusions and it is overruled.

## II.  Failure to Address Exhausted Claims

Petitioner next objects by asserting,

The Magistrate Judge failed to address a number of exhausted claims. These claims were presented to the South Carolina Supreme Court on direct review, and that court reached the merits of the claims. Thus, they are fully exhausted and should be ruled upon by this Court.

(ECF No. 107 at 4.) Specifically, Petitioner contends the following claims were presented

to the South Carolina Supreme Court:

I. Did the trial court err when, during jury qualification, it prevented defense counsel from instructing potential jurors as to the definition of murder?

II. Did the trial court err when it refused to allow the defense to present a witness who was prepared to testify concerning his search for rights-of-way to the Bixby property?

III. Did the court of appeals err when it 1) ruled that the South Carolina wiretap statute was constitutional, 2) ruled that SLED complied with the wiretap statute, and 3) declined to convene an evidentiary hearing to determine if SLED complied with the notification requirements of the wiretap statute?

IV. Did the trial court err when it refused to allow Rita to testify as to her experience in New Hampshire concerning property disputes?

V. Did the trial court err when it allowed various witnesses to testify regarding certain out-of-court statements made by Rita?

VI. Did the trial court err when it refused to charge the jury that the State had the burden of disproving each of the elements of self-defense?
. . .

VII. Did the trial court err when, during the penalty phase, it admitted into evidence a videotape of Deputy Wilson's funeral service?

VIII. Did the trial court err when it declined to rule that the court-ordered mental evaluation of Appellant violated the Fifth Amendment to the United States Constitution and Article I, § 12 of the South Carolina Constitution?

(*Id.* at 5 (quoting *State v. Bixby*, 698 S.E.2d 572, 578–79 (S.C. 2010)).) Petitioner further

states, "As enumerated by the South Carolina Supreme Court, Grounds I, II, III, VI, VII, VIII were based on federal constitutional law and should have been addressed in the R&R." (*Id.* at 5.)

Petitioner's second objection, like his first, exceeds the scope of his Petition. (*See* ECF Nos. 72, 72-1, and 80.) None of the claims that Petitioner cites in the objection are currently at issue before the Court. The objection does not point to any error in the Magistrate Judge's findings or conclusions, and it is hereby overruled.

### III. Ground I – Ineffective Assistance for Failing to Adequately Investigate and Prepare to Confront and Rebut the State's Evidence and Present Particular Mitigating Evidence

Magistrate Judge Rogers began his analysis of Petitioner's federal habeas claims by noting that federal habeas counsel, rather than drafting original arguments under the § 2254 standard, chose to adopt by reference the arguments of PCR counsel from the post-hearing brief. (ECF No. 94 at 36.) It goes without saying that PCR counsel's arguments were not framed in a manner designed to show the PCR court erred unreasonably in its factual findings or legal conclusions, because the arguments were submitted *before* the PCR court ruled. "Nonetheless, the [Magistrate Judge] . . . attempted to apply the § 2254 standards to those arguments and the portions of the PCR order addressing them." (*Id.* at 37.) Magistrate Judge Rogers further noted that Petitioner offered no argument or evidence challenging the State courts' factual findings. Therefore, because the Court is bound to accept those factual determinations as correct absent Petitioner rebutting that presumption by clear and convincing evidence, *see* 28 U.S.C. § 2254(e), the Magistrate Judge presumed the correctness of those findings throughout the Report (ECF No. 94 at 37) and the undersigned will do the same.

The Magistrate Judge found that Petitioner's Ground I claim that his trial counsel were ineffective for failing to adequately investigate, develop, and present mitigating evidence—specifically, Petitioner's social history and evidence regarding his mental health and possible brain damage—was properly exhausted in State court. (*Id.* at 37–38.) However, the Magistrate Judge noted that only sub-claims (H) through (L) were addressed by the PCR court on the merits; therefore, the substance of Ground I is found in sub-claims (H) through (L). (*See id.* at 38 n.16.) Sub-claims (A) through (G) were procedurally defaulted and Petitioner has not asserted any grounds for cause and prejudice to overcome the default. (*Id.*)

## A. Social History Investigation and Presentation

In his analysis of Ground I as to social history investigation and presentation, Magistrate Judge Rogers meticulously set out: (1) Petitioner's incorporated arguments (*id.* at 39–42); (2) the subjects and content of trial counsel's mitigation investigation as presented at the PCR hearing (*id.* at 42–45); (3) the social history evidence adduced at trial (*id.* at 46–56); (4) the relevant testimony presented at the PCR hearing—including an in-depth recitation of the psychosocial assessment conducted by Dr. Rebecca Kendig (*id.* at 56–65); and (5) the PCR court's analysis of and findings regarding the social history aspect of Petitioner's Ground I claims (*id.* at 65–69). The Magistrate Judge then stated:

> [Petitioner] has not specifically challenged any of the PCR court's findings and, after a thorough review of the record, the undersigned cannot find that the PCR court unreasonably applied established Supreme Court precedent or based its decision on an unreasonable determination of the facts.
> Based on the record, the undersigned finds the PCR court reasonably concluded that trial counsel hired experienced, qualified experts and undertook a reasonable mitigation investigation. The trial record and PCR testimony show that the investigation produced the information [Petitioner] now argues counsel should have presented during the penalty

14

phase. Thus, [Petitioner's] true contention lies in counsels' decision not to present some of that information.

(*Id.* at 69.) The Magistrate Judge explained why trial counsels' decisions to focus on some aspects of Petitioner's upbringing, unique susceptibility to indoctrination, and limited mental abilities—and not other aspects of his psychosocial history—are entitled to deference under the presumption that such decisions were made for tactical reasons. (*Id.* at 69–74 (citing *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.")).) Furthermore, the Magistrate Judge determined that it was not unreasonable for the PCR court to conclude Petitioner failed to show prejudice because the new mitigation materials presented in PCR, for the most part, only expanded on background information already known to trial counsel, and Petitioner failed to show they would have supported  a more successful mitigation theory than the one presented at trial. (*Id.* at 74–75.)

Petitioner objects to this portion of the Report by asserting, once again, that the Magistrate Judge erroneously failed to conduct a "de novo review of claims presented, but not addressed, by the PCR court." (ECF No. 107 at 6.) Petitioner argues that the Magistrate Judge's application of AEDPA's deferential standard of review was error "because the PCR court was presented with numerous bases for relief that were simply not passed upon by the PCR court." (*Id.*) Federal habeas counsel goes on to summarize, in four paragraphs devoid of any legal citation, "these claims" (*see id.* at 6–8), and to insist "they should have been subject to plenary review" (*id.* at 8).

Petitioner provides no authority for the assertion that this Court can simply decide the PCR did not "pass upon" certain aspects of his PCR claims, and then apply *de novo*

and/or "plenary" review. Federal habeas counsel seem to expect the Court to both make Petitioner's arguments for them, and then admit to having committed unspecified error by not intuiting the manner of critique that counsel wished to have applied to the PCR proceedings in the first instance. However, the Court is charged with making a *de novo* determination of only those portions of the Report to which specific objection is made. *See* 28 U.S.C. § 636(b)(1). Petitioner's objections to the Magistrate Judge's findings and conclusions regarding this portion of Ground I are conclusory; they fail to point the Court to any specific error in Magistrate Judge Rogers' analysis and are hereby overruled.

### B.  Mental Health Investigation and Presentation

The mental health investigation and presentation portion of Ground I avers IAC for failure to present evidence of possible brain damage and major mental illness; it centers on trial counsel's decision not to call forensic psychiatrist Dr. Donna Schwartz-Watts— who diagnosed Petitioner with a major mental illness—and trial counsel's failure to provide neuropsychologist Dr. Ruben Gur—who later used MRI and PET scans to show evidence of brain damage—with neuroimaging necessary to complete his analysis in advance of trial. (ECF No. 94 at 75.) Moreover, Ground I includes Petitioner's assertion that he is ineligible for the death penalty as a constitutional matter, both individually and categorically, because of his mental illness and brain damage. (*Id.* at 76.) In his evaluation of this portion of Ground I, the Magistrate Judge studiously recounted: (1) Petitioner's incorporated arguments (ECF No. 94 at 75–76); (2) the relevant evidence adduced during the penalty phase of trial (*id.* at 76–81); (3) the relevant testimony presented at both the first and second PCR hearings, including, *inter alia*, in-depth recitation of—(a) Dr. Gur's analysis and opinion that Petitioner suffers from brain damage and schizophrenia and

how those conditions would affect Petitioner's behavior, (b) court-appointed forensic psychiatrist Dr. Richard Frierson's explanation of why Dr. Gur's findings and conclusions had no impact on his professional opinion in this case, (c) Dr. Schwartz-Watts' explanation of her opinion that there were indicators of both mental illness and brain damage prior to the 2003 incident and that Dr. Gur's findings generally expanded on and reinforced, but did not change, her own findings, and (d) neurologist Dr. Helen Mayberg's review of Dr. Gur's findings, including her showing that Dr. Gur's method produced different results depending on the composition of the control group and the scanner used on the control subjects, neither of which matched Petitioner's situation (*id.* at 81–104); and (4) the PCR court's analysis of and findings regarding the mental health investigation and presentation aspects of Petitioner's Ground I claims (*id.* at 104–106).

The Magistrate Judge concluded, based on the record presented, that the PCR court did not unreasonably apply established Supreme Court precedent or base its conclusions on an unreasonable factual finding when it ruled: (1) Petitioner failed to show that trial counsel's omission in failing to supply Dr. Gur with neuroimaging before trial resulted in prejudice; (2) Dr. Gur's opinion would not have altered or influenced either Dr. Schwartz-Watts' or clinical neuropsychologist Dr. Tora Brawley's opinions; (3) Dr. Gur's schizophrenia diagnosis would have resulted in discord among the Defense team's experts; (4) the mitigation value of Dr. Gur's brain scan analysis was greatly undercut by the uncertainty of reliable results and the rejection of schizophrenia by the forensic psychiatrists for both the Defense and the State; and (5) Petitioner's claim that he was ineligible for the death penalty due to his mental health, cognitive functioning, and brain damage was procedurally defaulted under state law, absent a claim of IAC. (*See id.* at

104–06.) Magistrate Judge Rogers further found:

> As to [Petitioner's] claims surrounding trial counsel's dysfunctional communication with Dr. Gur, the PCR court reasonably found that [Petitioner] failed to show that, had Dr. Gur testified at trial, there was a reasonable probability that the jury would not have voted for death. Rather, the PCR testimony revealed Dr. Gur's analysis to be of questionable reliability and questionable import. Dr. Gur and others testified that his findings did not necessarily correlate to a specific diagnosis and his suggested diagnosis did not sync with that of any of the other mental health experts. Further, there was consensus among the experts that Dr. Brawley's evaluation comported with professional standards and, in large part, Dr. Gur's specific findings, independent of his suggested diagnosis, were duplicative of Dr. Brawley's findings and supported her conclusion that [Petitioner] suffered from a cognitive deficit. Thus, while Dr. Gur's testimony may have supported or reinforced Dr. Brawley's, it would not have significantly altered the information presented to the jury. Accordingly, [Petitioner] has not shown a reasonable probability of a different outcome had Dr. Gur testified at trial or that the result of the proceeding was fundamentally unfair or unreliable.

(*Id.* at 106–07 (citing *Sears v. Upton*, 561 U.S. 945, 954 (2010) ("[T]here is no prejudice when the new mitigating evidence 'would barely have altered the sentencing profile presented' to the decisionmaker.")).) And as to Petitioner's claim that he is constitutionally ineligible for the death penalty, the Magistrate Judge stated: (1) the Magistrate Judge would not disturb the PCR court's finding that the claim is procedurally barred by state law; and (2) Petitioner's claim fails in any event because nowhere in his briefing does he allege that he is actually intellectually disabled and the portions of the record he cites to support the claim establish that his intellectual functioning is "right above borderline." (*Id.* at 107–08.)

At the outset, the Court notes that Petitioner's objections to this portion of the Report are largely nonresponsive to the Magistrate Judge's reasoning and conclusions. (*See* ECF No. 107 at 8–11.) Instead, federal habeas counsel use the vehicle of Petitioner's objections to make, for the first time, arguments that should have been made

in the Petition itself and/or in the Traverse. Nevertheless, the Court will address the objections in turn.

Petitioner asserts the PCR court erred unreasonably when it "found that Dr. Gur's conclusions and methodology were not supported by the larger medical and scientific community in which he operated." (*Id.* at 8.) Citing the section of the PCR hearing transcript constituting the foundation for qualifying Dr. Gur as an expert in cognitive neuropsychology, neuroimaging, and brain damage (PCR App. Vol. XIV pp. 6710–18, ECF No. 23-7 at 238–46), Petitioner argues the PCR court's finding "is simply not true" because "Gur's work has been accepted by leading scientific journals, is the basis for major medical research, and has been repeatedly accepted in state and federal courts." (ECF No. 107 at 8.)

This objection appears to be referring to a single phrase in the PCR court's order, italicized below in the context of the PCR court's *Strickland* analysis regarding trial counsel's failure to provide the neuroimaging to Dr. Gur before trial:

> The question then becomes what impact would Dr. Gur's testimony have in light of the overall case. The answer is tied to vulnerability of the opinion. Dr. Gur's testimony differs from other diagnosis [sic] from medical doctors, lacks impact as it *lacks support in the medical community*, and is subject to change according to the control group he uses in comparison. In short, the testimony would indeed provide the "visual" presentation that counsel testified would have been preferable, however, the opinion itself is of little value for mitigation.

(PCR App. Vol. XIV p. 6632, ECF No. 23-7 at 160 (emphasis added).) The Court finds that this single phrase, even if untrue as Petitioner suggests, is not a material portion of the PCR court's findings with respect to Petitioner's *Strickland* claim premised on the failure to prepare and present Dr. Gur's testimony at trial. Immediately following the paragraph that includes the criticized phrase, the PCR court goes on to provide in-depth

analysis of precisely why Petitioner failed to demonstrate *Strickland* prejudice on this claim, including: (1) Dr. Schwartz-Watts', lead forensic psychiatrist for the Defense team, indication that she would have noted Dr. Gur's results but would not have used them in forming her opinion or in testimony; (2) the neuropsychological testing conducted by Dr. Brawley, to which Dr. Brawley testified at trial, already indicated that Petitioner suffered from cognitive dysfunction and frontal lobe deficits, which opinion was confirmed by similar test results from the Department of Mental Health testing conducted by Dr. Frierson; (3) Dr. Gur's analysis and opinion, if presented, would have created discord among the defense team's experts; (4) there was no necessary link between any particular illness or dysfunction and the identification of reduced volume areas in Petitioner's brain; (5) clinical psychologist Dr. Marla Domino testified that neuroimaging is not presently a standard of practice for neuropsychological testing; (6) Dr. Gur conceded that Dr. Brawley used the proper, accepted tests and procedure which did not include his protocol; (7) when the control group was changed between the first and second PCR hearings the results of Dr. Gur's analysis changed dramatically, calling the reliability of the method into question. (*See* ECF No. 23-7 at 160–63.) Petitioner has not even begun to explain why any of this analysis, all of which is supported with specific citations to record evidence, is erroneous. Moreover, the objection does not point to any error in the Magistrate Judge's sound reasoning and conclusions. The objection is a red herring and is overruled.

Petitioner next asserts the PCR court "unreasonably determined that counsel made an informed strategic decision not to call Dr. Donna Schwartz-Watts" because trial counsel had not made a sufficiently thorough mitigation investigation when they "made

their decision not to present Dr. Schwartz-Watts' conclusion that [Petitioner] suffered from schizoaffective disorder . . . ." (*See* ECF No. 107 at 8–9.) This objection is compound in that it first presumes that trial counsel's mitigation investigation was inadequate, and second asserts that the decision not to call Dr. Schwartz-Watts was constitutionally ineffective assistance because of the opinion she was prepared to offer about Petitioner's mental health condition. However, as described in the Report, trial counsel's mitigation investigation was extensive and Petitioner has not demonstrated that it was materially incomplete. (ECF No. 94 at 42–45, 69–70.) The Magistrate Judge aptly noted trial counsel's PCR testimony regarding the Defense team's last-minute decision not to call Dr. Schwartz-Watts:

> At PCR, Mr. [E. Charles] Grose testified that, knowing that Dr. Frierson, who was ordered by the court to conduct a mental health evaluation was going to testify regardless, he and Mr. [William N.] Nettles decided to call him in order to have some control over how his testimony was presented to the jury. (*See* PCR App. Vol. XV pp. 7331–32, ECF No. 23-8 at 359–60.) Mr. Grose testified that his preference would have been to present [Petitioner's] social history through Dr. Schwartz-Watts, but that, after Dr. Frierson testified, he became concerned about how discrepancies between the two experts' opinions would play to the jury. (*See id.* pp. 7329–31, ECF No. 23-8 at 357–59.) Mr. Grose further indicated that losing Dr. Schwartz-Watts as a social history witness was a result of his strategic decision not to call her in her capacity as a forensic psychiatrist. (*See id.* p. 7349, ECF No. 23-8 at 377.)

(ECF No. 94 at 70.) This testimony led the Magistrate Judge to conclude that, "contrary to [Petitioner's] assertion, the PCR court reasonably found that counsel's decision not to present social history evidence through Dr. Schwartz-Watts, was not based on a lack of information, but on a reasonable and fully-informed trial strategy." (*Id.* at 70–71.) The PCR court relatedly summarized Mr. Grose's testimony:

> Mr. Grose testified that he made a strategic decision not to call Dr. Schwartz-Watts after calling Dr. Frierson and after calling Dr. Brawley.

(December 2012 PCR Tr. pp. 636–637) [ECF No. 23-8 at 357–58]. He was aware, when he made the decision, that he would not be presenting the social history through the doctor. (December 2012 PCR Tr. p. 656) [ECF No. 23-8 at 377]. Mr. Grose testified that he was concerned about the discrepancies between the diagnoses from Dr. Frierson and Dr. Schwartz-Watts and hoped to show with Dr. Brawley that Dr. Frierson was not privy to all necessary information that may have shown additional problems. In fact, Mr. Grose testified it was an intentional, strategic decision not to provide additional information to Dr. Frierson in order to show a deficiency in the opinion even though Dr. Frierson had requested additional information from the defense. (December 2012 PCR Tr. pp. 636-642) [ECF No. 23-8 at 357–63]. Mr. Grose testified that evidence of "symptoms of mental illness," brain damage, and sexual abuse could be presented to aid in explaining why [Petitioner] was more susceptible to the Bixby's belief system. (December 2012 PCR Tr. pp. 659-660) [ECF No. 23-8 at 380–81].

(PCR App. Vol. XIV p. 6622, ECF No. 23-7 at 150.)

Upon review, the Court finds no error in the Magistrate Judge's reasoning and analysis on this issue. In his PCR testimony, Mr. Grose testified that the "primary reason" why the Defense chose not to call Dr. Schwartz-Watts was because "there were inconsistencies between her report and Dr. Frierson's report, and there was [sic] discrepancies between them. And . . . I recall being worried about how some of those discrepancies might play out." (PCR App. Vol. XV p. 7330, ECF No. 23-8 at 358.) Specifically, the main inconsistency was that "Dr. Schwartz-Watts had diagnosed the schizoaffective disorder and Dr. Frierson had not," diagnosing narcissistic-personality disorder instead. (*Id.*) Mr. Grose further testified, "I was worried about how the jury might interpret some of that on . . . cross-examination. I was worried to some extent . . . what she was saying about the schizoaffective disorder wasn't tied to the beginning of the events." (*Id.* at 7331, ECF No. 23-8 at 359.) The record evidence demonstrates that trial counsel's decision not to call Dr. Schwartz-Watts, and instead attempt to shape the testimony of the court-appointed expert, Dr. Frierson (*see id.* at 7332, ECF No. 23-8 at

360), was strategic. Whether that decision turns out to have been the best strategic choice among available options is beside the point, as Petitioner has not shown that trial counsel's choice not to call Dr. Schwartz-Watts was objectively unreasonable. *See, e.g.*, *Byram v. Ozmint*, 339 F.3d 203, 210 (4th Cir. 2003) (stating, where counsel spent substantial time preparing for trial with a forensic psychologist and forensic psychiatrist, the "strategic decision not to present psychological evidence was a reasonable one because such evidence 'is a double-edged sword that might as easily have condemned [defendant] to death as excused his actions.'" (quoting *Truesdale v. Moore*, 142 F.3d 749, 755 (4th Cir.1998)) (modifications in original)). Petitioner has not shown that the PCR court unreasonably construed the facts or unreasonably applied federal law on this issue. The objection is overruled.

Petitioner further asserts that the Magistrate Judge erred in finding that the PCR court correctly applied *Strickland v. Washington*. (ECF No. 107 at 9–11.) The gravamen of this objection is that the PCR court, and by extension the Magistrate Judge, erroneously concluded that *State v. Council*, 670 S.E.2d 356 (S.C. 2008) had no bearing on the standard of care required at the time of Petitioner's trial because *Council* was not decided until 2008. Petitioner argues, "This holding is plainly wrong: *Council* held trial counsel's actions ineffective for a trial long *predating* [Petitioner's]. The deficiencies at issue in *Council* were in 1996, over a decade before [Petitioner] was sentenced to death." (ECF No. 107 at 9–10 (emphasis in original).)

With respect, this line of argument is sophistry. The fact that the trial at issue in *Council* came before Petitioner's trial in temporal order is immaterial to whether the rule regarding the standard of care established in *Council* was in place at the time trial counsel

took the relevant actions in the instant case. In *Council*, the South Carolina Supreme Court upheld the PCR judge's determination that trial counsel was ineffective in failing to adequately investigate and present mitigating evidence. 670 S.E.2d at 361. The *Council* court found that, despite knowing mitigation evidence was the only means of influencing the jury to recommend a life sentence,

> trial counsel: only obtained the DJJ and state hospital records before trial; did not request certain background records until the day of jury selection; did not set up a meeting between Dr. Kuglar [the court-appointed forensic psychiatrist] and Respondent until one month before trial; and provided Dr. Kuglar with only limited records. As in *Wiggins*, counsels conduct fell below the standards set by the ABA. *See American Bar Association Guidelines for the Appointment and Performance of Counsel In Death Penalty Cases*, 11.4.1(2)(C) (1989) (once counsel is appointed in any case in which the death penalty is a possible punishment, he or she should begin, among other things, collecting information relevant to the sentencing phase including, but not limited to: medical history, educational history, family and social history, and prior adult and juvenile record).

*Council*, 670 S.E.2d at 363. Moreover, the *Council* court noted, "even though the funding was available, trial counsel chose not to hire a social history investigator. Instead he relied on his law partner and private investigator to collect potentially relevant information." *Id.* And further, "Even if trial counsels investigation could be deemed sufficient or adequate we believe trial counsel also failed to present any significant mitigating evidence. Trial counsels mitigation presentation consisted solely of Respondents mothers extremely limited testimony." *Id.* at 364 (errors in original).

Regarding *Council*'s application in the instant case, the PCR court stated:

> Of course, the *Council* case standard is not at issue here. Not only was the standard recognized in December 2008, well after the February 2007 trial, but trial counsel's performance is consistent with that standard as trial counsel retained and relied upon an experienced mitigation investigator. Further, the well-seasoned trial attorneys not only retained the services of a mitigation investigator, along with other experts, but also personally investigated defendant's background (even going to New Hampshire).

There is no deficient performance.

(PCR App. Vol. XIV p. 6639, ECF No. 23-7 at 167.) Petitioner has not demonstrated anything erroneous about this finding, and the Court concludes the Magistrate Judge correctly determined the PCR court's finding was not unreasonable.

Petitioner goes on to assert, "If anything, the standard of care at the time of [Petitioner's] trial was much more demanding," because in *Wiggins v. Smith*, 539 U.S. 510 (2003), the U.S. Supreme Court "held for the first time that trial counsel was prejudicially ineffective within the meaning of *Strickland*, granting penalty phase relief." (ECF No. 107 at 10.) The citation to *Wiggins* is inapt. The court in *Wiggins* held, "Counsel's decision not to expand their investigation beyond the PSI and the DSS records fell short of the professional standards that prevailed in Maryland in 1989." *Wiggins*, 539 U.S. at 524. The mitigation investigation in the instant case—which included (a) the combined efforts of mitigation specialist Drucy Glass, fact investigator Pete Skidmore, and forensic psychiatrist Dr. Donna Schwartz-Watts travelling to New Hampshire to meet with many of Petitioner's siblings, other family members, a sheriff, and one of Petitioner's teachers, (b) multiple trips to New Hampshire by trial counsel with the purpose of developing the mitigation case, and (c) a South Carolina investigation involving employment records, interviews with Petitioner, a file of records associated with Petitioner's workman's compensation claim, letters from Petitioner's mother and notes regarding her attempted involvement in the case, medical records from multiple sources, and interviews with Petitioner's girlfriend who knew him well for several years (*see* ECF No. 94 at 42–45)—cannot be seriously compared with the mitigation investigation at issue in *Wiggins*. Suffice it to say, Petitioner has not shown that the PCR court unreasonably

applied *Strickland* or *Wiggins*, and the objection is overruled.

Likewise, Petitioner's citations to *Rosemond v. Catoe*, 680 S.E.2d 5 (S.C. 2009) and *Porter v. McCollum*, 558 U.S. 30 (2009) are unavailing. In *Rosemond*, the South Carolina Supreme Court held that the trial counsel's failure to present any evidence of the defendant's alleged paranoid schizophrenia as a mitigating factor at sentencing, based on counsel's mistaken belief that such evidence was precluded by the trial court finding the defendant competent to stand trial, constituted deficient performance for purposes of an IAC claim. *Rosemond*, 680 S.E.2d at 8–9. Moreover, the *Rosemond* court found that this want of mitigation evidence resulted in prejudice under *Strickland* and *Wiggins*, because confidence in the outcome of the capital sentencing proceeding was undermined when "**no** evidence was presented to the jury concerning Rosemond's troubling mental health issues." *Id.* at 9–10 (emphasis in original). Unlike *Rosemond*, the Defense team in the instant case presented substantial evidence regarding Petitioner's mental health problems, including testimony from multiple expert witnesses. (*See* ECF No. 94 at 76–81.) In *Porter*, the U.S. Supreme Court reversed as an unreasonable application of federal law the Florida Supreme Court's decision that the defendant was not prejudiced during the penalty phase of a capital murder trial by his counsel's failure to investigate or present evidence of his mental health or mental impairment. 558 U.S. at 42. Essential to the court's reasoning was its finding that "neither the postconviction trial court nor the Florida Supreme Court gave any consideration for the purpose of nonstatutory mitigation to [neuropsychologist] Dr. Dee's testimony regarding the existence of a brain abnormality and cognitive defects." *Id.* at 42–43. The *Porter* court stated, "While the State's experts identified perceived problems with the tests that Dr. Dee used and the conclusions he

drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge." *Id.* at 43. In his objections, Petitioner seizes onto the fact that the *Porter* court found *Strickland* prejudice even though "the State's experts identified perceived problems with the tests" presented by Porter during his PCR proceedings. (*See* ECF No. 107 at 11.) Here, Petitioner is attempting to draw an analogy to the critique of Dr. Gur's methodology and results during PCR proceedings in the instant case. But again, *Porter* is inapposite because in that case Porter's trial counsel put on *no evidence* related to Porter's mental health problems. *Porter*, 558 U.S. at 32. Petitioner has not shown that the PCR court made unreasonable factual findings or conclusions of law with respect to the mental health investigation and presentation portion of Ground I, and his objections to the Magistrate Judge's analysis of these issues are overruled.

IV. **Ground II – Ineffective Assistance for Failing to Object to the Jury Instruction that Malice Could be Inferred from the Use of a Deadly Weapon**

Petitioner's claim in Ground II, which was properly exhausted in State court, alleges IAC for failing to object to the following jury instruction:

> Inferred malice may also arise when the deed is done with a deadly weapon. A deadly weapon is any article, instrument, or substance which is likely to cause death or great bodily harm. Whether an instrument has been used as a deadly weapon depends on the facts and circumstances of each case.

(PCR App. Vol VII pp. 3110–11, ECF No. 22-1 at 138–39.) In *State v. Belcher*, the South Carolina Supreme Court held that "a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide. 685 S.E.2d 802, 803–04 (S.C. 2009). The *Belcher* court stated, "Because our decision represents a clear

break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved." *Id.* at 810. However, the *Belcher* court clarified that the ruling "will not apply to convictions challenged on post-conviction relief." *Id.* (citation omitted).

The Magistrate Judge noted (ECF No. 94 at 110) that the PCR court held, "This language specifically bars reliance on *Belcher* in post-conviction relief proceedings. Thus, the issued raised cannot be reached in these proceedings, and the Applicant's claim for relief on this issue is denied." (PCR App. Vol. XIV p. 6597, ECF No. 23-7 at 125.) Next the Magistrate Judge described how the PCR court nevertheless went on to analyze Petitioner's IAC claim under *Strickland* and found Petitioner had not shown prejudice because, at least as regards Petitioner killing Constable Ouzts, giving the instruction in Petitioner's trial would not have offended *Belcher*. (ECF No. 94 at 111.) The Magistrate Judge also recounted the PCR court's finding that the record did not support *Strickland* prejudice because the jury instructions as a whole were sufficient. (*Id.*) Finally, the Magistrate Judge independently analyzed the question of whether Petitioner could show his trial counsel was ineffective for failing to make an objection based on *Belcher*, which was decided two years after Petitioner's trial, and found that Petitioner had not demonstrated that the PCR court's determinations reflect either unreasonable factual findings or an unreasonable application of federal law. (*Id.* at 112.)

Petitioner objects by arguing, "The Magistrate Judge has fundamentally misconstrued Petitioner's claim and erroneously concluded that even if counsel had raised [an objection to the inferred malice instruction], there was no reasonable probability that the outcome would have been different." (ECF No. 107 at 12.) Petitioner asserts that

trial counsel violated the standard of care required in capital cases within the meaning of *Strickland* by failing to preserve "known legal error," because "trial counsel was well aware of the issue, was litigating in other cases prior to [Petitioner's], and acknowledge prior to trial its relevance here, and, despite knowing it was relevant, failed to raise it in [Petitioner's] case." (*Id.* (errors in original).) Petitioner cites South Carolina Supreme Court cases for the general propositions that under state law counsel must object to known error within jury instructions in order to preserve the issue (*id.* at 12 (citing *State v. Hudgins*, 460 S.E.2d 388, 391 (S.C. 1995))), and the failure to do so can constitute deficient performance (*id.* at 13 (citing *Tate v. State*, 570 S.E.2d 522, 526 (S.C. 2002); *Taylor v. State*, 439 S.E.2d 820, 821 (S.C. 1993))). Finally, Petitioner asserts the PCR court made an unreasonable finding of fact when it determined "there was nothing presented at trial to 'mitigate, excuse or justify" the killing, mooting any concerns about the inferred malice instruction." (*Id.*) Petitioner argues the fact that the trial court instructed on self-defense and voluntary manslaughter shows that such evidence was present in the record. (*Id.*)

The Court finds that Petitioner's objections lacks merit, and they are hereby overruled. First, the decision in *Belcher* makes it eminently clear that the holding announced therein does not apply to convictions challenged on PCR. *Belcher*, 685 S.E.2d at 810. On this basis alone, Petitioner's objections are unavailing. *See McCrea v. McCabe*, No. 3:11-CV-01390-RMG, 2012 WL 2890005, at *4 (D.S.C. July 13, 2012) ("The construction of when a change in state law should become effective is purely a state law issue. Thus, *State v. Belcher* is inapplicable to the instant matter." (internal citations omitted)). Second, Petitioner's trial counsel did not forfeit an objection regarding "known legal error" precisely because the *Belcher* ruling was not in place until two years after

Petitioner's trial. Thus, the state law that Petitioner cites regarding forfeiture of known error within jury instructions, and how such forfeiture may constitute deficient performance, is inapposite because trial counsel are not required to "anticipate changes in the law which were not in existence at the time of trial." *See Gilmore v. State*, 445 S.E.2d 454, 457 (S.C. 1994) (holding trial counsel "could not be ineffective for failing to request a jury instruction which would not be applicable to the offenses charged for at least another year"). Third, the PCR court's subsequent analysis of *Strickland* prejudice was not strictly necessary given that Petitioner's *Belcher*-based claim was clearly foreclosed; but Petitioner has not demonstrated that the PCR court made an unreasonable finding of fact in any event. The PCR court stated:

> "Errors, including erroneous jury instructions, are subject to a harmless error analysis." *See State v. Stanko*, 402 S.C. 252, 264, 741 S.E.2d 708, 714 (S.C. 2013). Further, because the issue was not raised on direct appeal, the *Strickland* claim requires a more intensive review of the record and analysis of the impact of the charge in light of the remaining evidence. *Strickland*, 466 U.S. at 695–696 ("a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury"). The record shows that there was no remotely legitimate claim of self-defense or any other legally cognizable claim to "mitigate, excuse or justify" the killing, *in regard to the shooting of State Constable Ouzts. See Strickland*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") Therefore, even if the allegation could be considered, it still would not afford relief—the instruction would have been given in this trial as, at the very least, it does not offend the *Belcher* decision *in regard to the second victim where there was no reasonable inference that would have supported self-defense in light of the entire record. Belcher*, 385 S.C. at 612, 685 S.E.2d at 810 n.10 (overruling cases "where two factors co-exist (1) approval of the jury instruction that malice may be inferred from the use of a deadly weapon, and (2) evidence was presented that, if believed, would have reduced, mitigated, excused or justified the homicide"). *See also State v. Price*, 400 S.C. 110, 115, 732 S.E.2d 652, 654 (S.C. Ct. App. 2012) ("*Belcher* does not prohibit the trial court from instructing the jury that it may

infer malice from the use of a deadly weapon where the only jury question created by the evidence is whether the defendant is the person who committed" the crime). Additionally, the charge could only be harmless where 1) there was ample evidence of express malice, and 2) where the trial judge gave an extensive charge on malice including that malice may be inferred "from conduct showing total disregard for human life." *See Belcher*, 385 S.C. at 611–612, 685 S.E.2d at 809–810 ("In many murder prosecutions, as Belcher concedes, there will be overwhelming evidence of malice apart from the use of a deadly weapon."). *See also Rosemond*, *supra*, *Arnold*, *supra*. The Supreme Court of South Carolina's analysis in *Stanko* is instructive.

In *Stanko*, the Court concluded, on direct appeal, that the jury instruction should not have been given, but affirmed finding the error harmless because there was overwhelming evidence of malice apart from the Defendant's use of a deadly weapon. Furthermore, any error in the jury instruction, when taken as a whole, was harmless because the trial judge gave other instructions as to malice and how it could be inferred. 402 S.C. at 265.

(PCR App. Vol. XIV pp. 6597–98, ECF No. 23-7 at 125–26 (emphasis added).) Read in context, it is clear that when the PCR court stated there was an absence of evidence showing a legitimate claim of self-defense or other circumstance justifying the killing, it said so only with respect to the murder of Constable Ouzts. (*See id.*) Again, Petitioner has not demonstrated this factual finding was unreasonable. The objections are overruled.

In a more recent development of the inferred malice instruction issue, the South Carolina Supreme Court stated, "A jury instruction that malice may be inferred from the use of a deadly weapon is an improper court-sponsored emphasis of a fact in evidence— that the deed was done with a deadly weapon—and it should no longer be permitted." *State v. Burdette*, 832 S.E.2d 575, 582 (2019), *reh'g denied* (Sept. 27, 2019). Therefore, the *Burdette* court held, "[R]egardless of the evidence presented at trial, a trial court shall not instruct the jury that it may infer the existence of malice when the deed was done with a deadly weapon." *Id.* The *Burdette* court acknowledged that its decision "overrules in

part a considerable amount of South Carolina case law," including *Belcher*, "insofar as it can be construed that we have approved a trial court's charge that a jury may infer the existence of malice from the defendant's use of a deadly weapon." *Id.* at 583 n.3. However, the South Carolina Supreme Court clarified, once again, "today's ruling will not apply to convictions challenged on post-conviction relief." *Id.* at 583 (citing *Belcher*, 685 S.E.2d at 810). Accordingly, although the South Carolina Supreme Court has now prohibited, in all evidentiary contexts, a jury instruction that malice may be inferred from the use of a deadly weapon, this development in the law does not benefit Petitioner.

## V.    Ground III – Ineffective Assistance for Failing to Recall Patrick White to Testify in the Sentencing Phase

Petitioner's claim in Ground III, which was properly exhausted in State court, alleges IAC for failing to call Patrick White, a potential witness who was excluded from testifying during the guilt/innocence phase, to testify at the sentencing phase of trial. Mr. White was retained by Petitioner to conduct a title abstract on the Bixby property in order to corroborate that Petitioner had a good faith belief that there was no right of way on the property. *Bixby*, 698 S.E.2d at 580. There is no evidence that Petitioner or anyone in his family consulted with Mr. White prior to the underlying crimes. Rather, Petitioner retained Mr. White as a form of *post hoc* corroboration that Petitioner's beliefs about his property rights were reasonable, and as a way of rebutting the State's assertion that the records concerning the right of way were easily accessible to the public. *See id.* Mr. White searched for any record of easements, encroachments, or rights of way pertaining to the Bixby property filed at the Abbeville County Clerk of Court's office. *Id.* After an *in camera* hearing, the trial judge ruled that Mr. White's testimony was irrelevant and inadmissible during the guilt/innocence phase because Mr. White was unaware of S.C. Code § 57-5-

570—which mandates that copies of highway plans with right of way designation be maintained in the tax assessor's office for the corresponding county—and Mr. White's search for public record of the right of way in question was incomplete. *Id.*

The Magistrate Judge reviewed the PCR court's decision regarding this issue and found that the PCR court made no unreasonable factual findings or conclusions of law. (ECF No. 94 at 115–17.) The PCR court stated, "Mr. White's testimony has been found to be irrelevant to [Petitioner's] state of mind, *i.e.*, a good faith belief that there was not a right of way on [Petitioner's] parents' property. Thus, it is not admissible for that reason at any stage." (PCR App. Vol. XIV p. 6600, ECF No. 23-7 at 128.)

Petitioner objects by asserting that the Report "applied undue deference to the State PCR court's resolution of this claim," and the "PCR court failed to address several bases for sustaining the claim, making those subject to plenary review in this court." (ECF No. 107 at 13.) Petitioner argues, "[f]irst, the PCR court failed to address the much broader scope of relevant evidence in the penalty phase than is permissible in the guilt phase of a capital trial," and "[s]econd, while concluding that the issue could have been raised earlier, the court failed to address whether trial counsel's ineffectiveness excused any default, rendering the claim reviewable here." (*Id.* at 13–14.)

The Court is unsure why Petitioner's objections reference the concept of procedural default here because Respondent concedes that this claim was properly preserved. Suffice it to say, this portion of the objections lacks merit. Petitioner's assertion that the "broader scope of relevant evidence in the penalty phase" would have permitted the introduction of Mr. White's testimony is also unavailing. Mr. White's testimony was irrelevant and inadmissible because: (1) his search for the right of way in question, and

inability to find it, had no direct effect on Petitioner's state of mind about the existence *vel non* of the right of way during the relevant time period; (2) though he held himself out as a professional title searcher, he was unaware of controlling statutory law that designated where the record in question was to be stored, so his testimony was unhelpful on the issue of whether the record was easily accessible to the public; and (3) if allowed, his testimony that he did not find any record of the right of way at the court house would be misleading because it would insinuate that such a record should be filed with the clerk of court, which is contrary to state law. *See Bixby*, 698 S.E.2d at 580–81. These reasons apply with equal force to Mr. White's potential testimony at sentencing as they did to Mr. White's precluded testimony during the guilt/innocence phase. Petitioner has not shown that the PCR court's factual findings or legal conclusions were unreasonable on this issue, nor has he shown that the Magistrate Judge's treatment of the claim evinces error. The remainder of the objections to the Magistrate Judge's analysis are conclusory and do not point the Court to any specific error in the Report. The objections are overruled.

## VI.     Ground IV – Appellate Counsel was Constitutionally Ineffective for Failing to Adequately Brief Procedural Bar Issues

Petitioner's claim in Ground IV, which was properly exhausted in State court, alleges that appellate counsel was ineffective for having inadequately briefed in Petitioner's direct appeal a procedural bar issue related to jury *voir dire*. The Magistrate Judge aptly noted that when applying *Strickland*'s deficiency and prejudice standards to the performance of appellate counsel, while it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Petitioner's Ground IV claim takes this already formidable task and makes it the more difficult by

asserting that appellate counsel, though having briefed the procedural bar and *voir dire* issues, was ineffective for having done so *inadequately*.

The Magistrate Judge summarized: (1) the underlying *voir dire* issue; (2) the procedural bar based on trial counsel's use of only seven of ten available strikes, *see State v. Tucker*, 478 S.E.2d 260, 264 (S.C. 1996) ("Failure to exhaust all of a defendant's peremptory strikes will preclude appellate review of juror qualification issues."); (3) the South Carolina Supreme Court's application of the procedural bar in Petitioner's case, *see Bixby*, 698 S.E.2d at 580 ("Because defense counsel used only seven of the ten available strikes during jury selection, review of this issue is barred."), and subsequent treatment of the merits of the claim, *see id.* ("Even if this issue is not procedurally barred because of [Petitioner's] failure to exhaust all of his peremptory strikes, his arguments concerning jury qualification are without merit."); and (4) the PCR court's finding that Petitioner could not meet either prong of *Strickland* because the *Bixby* court considered the procedural bar and applied it over appellate counsel's argument, and alternatively because the *Bixby* court considered and rejected the *voir dire* claim on its merits. (*See* ECF No. 94 at 118–21.)

The Magistrate Judge further noted that Petitioner's ability to succeed on Ground IV depends, in part, on a question of state law, which the State courts have decided, and which is entitled to great deference. (*Id.* at 121.) Magistrate Judge Rogers stated, "This Court has no authority to redetermine the applicability of a procedural bar, which is decidedly a question of state law." (*Id.* at 122 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).)

Petitioner objects by arguing that the Report was

> erroneous insofar as it applied section 2254(d)'s deferential standard of
> review because substantial bases for sustaining the claim were never
> addressed by the PCR Court. Specifically, the PCR court failed to address
> whether the novel application of the procedural bar at issue raised required
> a higher standard of care than undertaken by appellate counsel in this
> capital case. The PCR court also failed to address the argument that the
> reason for the South Carolina Supreme Court's misapplication of the
> procedural bar *and* misapplication of *Morgan v. Illinois*, was the same: not
> having adequate information about the jurors. Because that point was
> critical to understanding petitioner's argument, the PCR Court unreasonably
> concluded that "the argument challenged is not the underlying claim on
> defining murder in *voir dire*." Order at 21.

(ECF No. 107 at 14 (errors in original).) With respect, Petitioner's objection is difficult to

follow and the Court declines to make Petitioner's arguments for him. To the extent the

objection seeks to undermine the PCR court's findings by singling out the sentence

fragment quoted above from nine pages of analysis (*see* PCR App. Vol. XIV pp. 6601–

09, ECF No. 23-7 at 129–37), it should be noted that the PCR court followed that

statement with this sentence: "Rather, the appellate argument at issue in the instant PCR

claim is the appellate argument on application of the state procedural bar." (*See id.* p.

6604, ECF No. 23-7 at 132.) There is nothing erroneous or confusing about either

statement. The PCR court was merely giving a helpful roadmap as to the substance of

the issue as presented in PCR counsel's post-hearing brief. (*See id.* (outlining PCR

counsel's progression of arguments regarding appellate counsel's allegedly inadequate

briefing of the procedural bar issue); PCR App. Vol XII pp. 5802–05, ECF No. 23-3 at

330–33 (constituting the relevant portion of PCR counsel's post-hearing brief).) In any

event, the objection does not reveal any unreasonable finding of fact or conclusion of law

in the PCR court's analysis of Ground IV. Accordingly, the objection is overruled.

**VII.** **Ground V – Petitioner's rights to due process and the effective assistance of counsel were violated by trial counsel's failure to (1) present evidence and offer argument during the guilt phase to the extent that the jury reached the conclusion that Petitioner was the shooter, (2) argue that the jury was improperly permitted to engage in premature deliberations, (3) prevent jury misconduct that tainted the verdict and sentence, and (4) adequately argue that the imposition of death violates the United States Constitution.**

Petitioner's claim in Ground V, which was exhausted in State court, centers around the PCR court's pre-hearing finding that Petitioner could not admit into evidence a statement from juror Timothy Wilson. (*See* PCR App. Vol. XIV pp. 6609–11, ECF No. 23-7 at 137–39.) Petitioner sought to introduce juror Wilson's statement to show that "[d]uring the guilt phase the jury reached the conclusion that [Petitioner] was the shooter in the incident giving rise to the charges. Once some members of the jury reached that conclusion, they foreclosed the possibility of a life sentence." (*Id.* p. 6609, ECF No. 23-3 at 137.) The Magistrate Judge noted that the only argument pertaining to Ground V contained in the incorporated portion of PCR counsel's pre-hearing brief is approximately one page that mainly consists of relevant background information, and then Petitioner's "conce[ssion] that he presented no evidence to support" this claim. (ECF No. 94 at 122–23; *see* PCR App. Vol. XII pp. 5806–07, ECF No. 23-3 at 334–35 (constituting the relevant portion of PCR counsel's post-hearing brief).)

The PCR court held that: (1) juror Wilson's statement was not an affidavit and thus was not in proper form to be admitted; (2) even if it had been in proper form it would not have been admissible under South Carolina Rule of Evidence 606(b) because the assertions in the statement did not describe extraneous prejudicial information improperly brought to the jury's attention, outside influence improperly brought to bear upon any juror, or any other juror misconduct; and (3) Petitioner conceded in his post-hearing brief

that he failed to present evidence in support of this claim. (*See* PCR App. Vol. XIV pp. 6609–11, ECF No. 23-7 at 137–39.) The Magistrate Judge accurately recounted the PCR court's findings and stated, "To the extent this portion of Ground V challenges the PCR court's evidentiary ruling, [Petitioner] has failed to sufficiently allege how the court's ruling denied his constitutional rights." (ECF No. 94 at 124 (citation omitted).) Further, the Magistrate Judge found Petitioner "has not actually alleged any error in the PCR court's evidentiary ruling. Nor has [Petitioner] offered additional evidence of premature deliberations or juror misconduct or that trial counsel should have been aware of misconduct." (*Id.*) Finally, regarding Petitioner's general allegation that trial counsel failed to adequately argue the imposition of death violates the United States Constitution, the Magistrate Judge found "[Petitioner] has not offered any argument in support of this claim in the Petition, incorporated from the PCR post-hearing brief, or in any of the subsequent briefing." (*Id.* at 125.) Accordingly, Magistrate Judge Rogers determined that Ground V warrants no relief and is subject to summary judgment. (*Id.*)

Petitioner's objection, in its entirety, states:

> The Magistrate Judge correctly concluded that the PCR hearing included no evidence regarding the jurors' premature deliberations. However, the R&R is erroneous in concluding that there is no related cognizable issue before this Court. Prior to the PCR hearing, the state moved to exclude Juror Timothy Wilson's affidavit which, in pertinent part, states, "During the penalty phase, we did not go very long. Once decided [Petitioner] shot the two officers—something we had decided in the guilt phase—for some of us there was not any question of what the penalty would be, we would sentence him to death."
> The PCR court excluded the affidavit on merits grounds: it did not constitute evidence of impermissible premature deliberation. [Petitioner] petitioned the South Carolina Supreme Court for review of the ruling. Thus, the related issues are exhausted and, contrary to the R&R, properly before this Court.

(ECF No. 107 at 15 (errors in original).) Again, it is difficult to understand what Petitioner

is asserting through his objection. The objection may be referring to the Magistrate Judge's discussion of sub-claim (4), which asserts that trial counsel were ineffective for having failed to "adequately argue that the imposition of death violates the United States Constitution." (*See* ECF No. 72-1 at 75 (numbering of sub-claims provided by the Court for the sake of clarity).) As described above, the Magistrate Judge noted that Petitioner offered no argument or evidence in support of this sub-claim, and further stated:

> "The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action." *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009). Further, based [on] this Court's review of the record and the briefing, it does not appear this issue has been raised to and ruled upon by the [S]tate courts. Thus, as Respondents have asserted (*see* ECF No. 83 at 105), this conclusory, unsupported portion of Ground V is also procedurally defaulted. *See, e.g.*, *Coleman*, 501 U.S. at 735 n.1. [Petitioner] has neither acknowledged the default nor asserted cause and prejudice to overcome it.

(ECF No. 94 at 125.) Petitioner's objection reveals no error in the Magistrate Judge's sound reasoning and analysis. The objection is overruled.

VIII.    **Ground VI – Petitioner's rights to due process and the effective assistance of counsel were violated by trial counsel's failure to protect Petitioner's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.***

Petitioner's ADA Claim in the "full petition" generally asserts that trial counsel were ineffective for failing to protect his rights under the ADA. (*See* ECF No. 72-1 at 75.) Petitioner makes more specific ADA-based claims in a previous iteration of the Petition. (*See* ECF No. 72 at 6–7 (claims (26) and (27).) The Magistrate Judge disaggregated the various IAC theories presented in Petitioner's ADA Claim as follows:

> (1) trial counsel were ineffective for failing to recognize and respond to [Petitioner's] disability in a manner consistent with the ADA; (2) appellate counsel were ineffective for failing to recognize and respond to [Petitioner's] disability in a manner consistent with the ADA; (3) PCR counsel were ineffective for failing to properly respond to [Petitioner] as required by the

ADA; (4) trial counsel were ineffective for failing to present evidence and argument at trial that state and local law enforcement officials were insufficiently trained in investigating, apprehending, and interrogating disabled persons as defined by the ADA. . . . [I]t appears that the primary argument advanced by [Petitioner] is that trial counsel were ineffective in failing to present in mitigation violations of the ADA by local law enforcement upon approaching [Petitioner] on the day of the murders.

(ECF No. 94 at 126–27.) The Court finds this organization of the constituent parts of the ADA claim to be helpful and Petitioner has not challenged its accuracy; therefore, the Court will proceed with the analysis of Ground VI in the manner itemized by Magistrate Judge Rogers.

The parties agree that the ADA Claim is procedurally barred. The Report accurately states the standard that Petitioner must meet in order to excuse the procedural default and bring a, so-called, "*Martinez* claim." (*See* ECF No. 94 at 127–30); *see also Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the *Martinez* test as follows: "[A] reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of counsel is substantial, *and* whether there is prejudice" (emphasis in original)). The Magistrate Judge first recommends denying and dismissing the portions of Ground VI that pertain to the alleged ineffective assistance of appellate counsel, and any freestanding claim of ineffective assistance of PCR counsel. (ECF No. 94 at 130–31.) This is because: (a) *Martinez* does not extend to claims of ineffective assistance of appellate counsel when a petitioner's PCR counsel provides ineffective assistance by failing to raise that claim, *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017); and (b) *Martinez* does not provide an avenue for habeas relief based on a freestanding claim of ineffective assistance of PCR counsel, *see Martinez*, 566 U.S. at 16 (distinguishing the equitable

ruling in *Martinez* from a hypothetical constitutional ruling, which would provide a route to freestanding constitutional claims). Next, the Magistrate Judge determined that Petitioner has failed to meet his burden under *Martinez* as to the remaining claims in Ground VI. (ECF No. 94 at 131.) The Magistrate Judge provided the following observations and reasoning to support this determination: (a) Petitioner has not presented any evidence regarding PCR counsel's recognition of, investigation of, or decision-making regarding the underlying claims of ineffective assistance of trial counsel, and therefore has not shown that PCR counsel was ineffective under *Strickland*, *see Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) ("[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); (b) Petitioner has not presented any evidence regarding the underlying allegations of ineffective assistance of trial counsel, either—(i) that trial counsel failed to represent Petitioner in a manner consistent with the ADA, or (ii) that trial counsel ineffectively failed to present evidence and argument that law enforcement officers did not comply with the ADA; and (c) Petitioner has, in the first instance, failed to set forth any mental or physical condition that qualifies him as "disabled" within the meaning of the ADA, who knew of any such disability, when they knew of any such disability, and what provision could have been made to accommodate any such disability. (ECF No. 94 at 131–34.) Finally, the Magistrate Judge found that Petitioner is not entitled to discovery or an evidentiary hearing regarding the applicability of the ADA to his case because he has not adequately alleged facts which, if proven, would entitle him to relief. (*See id.* at 134–39.)

Petitioner objects to the Magistrate Judge's conclusions by asserting:

> Sufficient facts to warrant a hearing on the ADA claims is clearly borne out
> by the record in this matter. The facts, substantially undisputed, regarding
> Petitioner's disabilities was set forth and summarized in detail in Petitioner's
> *Post Hearing PCR Brief*. App. 5655-5720. Sufficient facts were set forth
> herein to mandate denying summary judgment and holding a hearing on the
> ADA issues. Petitioner has easily met the standard for overcoming a
> summary judgment motion.

(ECF No. 107 at 16 (errors in original).) The cited portion of PCR counsel's post-hearing

brief constitutes the first sixty-six pages of the brief, beginning with the introduction and

concluding with a twenty-page section entitled "f. [Petitioner's] lifetime of abuse and

mental and cognitive impairments left him uniquely vulnerable to his parents' using him

in their dispute"—which recounts the PCR testimony of several mental health experts,

including Dr. Gur's testimony regarding the neuroimaging of Petitioner's brain. (*See* PCR

App. Vol. XII pp. 5655–720, ECF No. 23-3 at 183–228.) Federal habeas counsel's

slipshod reference to PCR counsel's post-hearing brief does not get Petitioner any closer

to satisfying his burden under *Martinez*. The objection is conclusory and is overruled.

Petitioner further asserts:

> The R&R seems to totally ignore the United States Supreme Court decision
> in [*Buck v. Davis*, 137 S. Ct. 759 (2017).] PCR counsel was on notice of and
> should have raised the [*City and County of San Francisco v. Sheehan*, 135
> S. Ct. 765 (2015)] issues. The ADA issues were ignored at the PCR hearing.
> This is directly contrary to the recent decision in *Buck*.

(ECF No. 107 at 17.) In *Buck*, the U.S. Supreme Court held that the trial defense counsel's

performance during the penalty phase of Buck's capital murder trial, in presenting expert

testimony that Buck was statistically more likely to act violently in the future because he

was black, fell outside the bounds of competent representation. 137 S. Ct. at 775. The

*Buck* court stated, "Given that the jury had to make a finding of future dangerousness

before it could impose a death sentence, [the expert's] report said, in effect, that the color

of Buck's skin made him more deserving of execution." *Id.* In short, *Buck* has no application here. In *Sheehan*, a group home resident who suffered from mental illness brought an action against San Francisco police officers pursuant to 42 U.S.C. § 12101 *et seq.* and 42 U.S.C. § 1983, alleging that the officers violated her rights under the ADA and the Fourth Amendment by the manner in which they arrested her, which included the officers shooting Sheehan after she turned violent. 135 S. Ct. at 1769–71. The district court granted summary judgment in favor of the officers and the Ninth Circuit Court of Appeals vacated in part, holding that it was for a jury to decide whether the officers should have accommodated Sheehan despite the exigent circumstances. *Id.* at 1771–72. The *Sheehan* court determined: (1) the writ on the question of what the ADA required was dismissed as improvidently granted, *id.* at 1774; (2) the officers' initial warrantless entry was lawful, *id.* at 1774–75; (3) the officers were justified in using potentially deadly force, *id.* at 1775; and (4) the officers were entitled to qualified immunity on Sheehan's claim arising from their reentry into her room, *id.* at 1778. The analysis and holdings in *Sheehan* offer Petitioner no assistance in the instant case, and most assuredly not with respect to overcoming the procedural default of his ADA Claim. Petitioner's objections to Magistrate Judge Rogers' findings as to Ground VI are overruled *in toto*.

## CONCLUSION

In light of the foregoing analysis, the Court overrules Petitioner's objections, **ACCEPTS** the Magistrate Judge's Report (ECF No. 94), **GRANTS** Respondents' motion for summary judgment (ECF No. 84), and **DENIES** Petitioner's Petition (ECF Nos. 44, 72, 72-1, and 80) in its entirety.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 31, 2020
Charleston, South Carolina